# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVEL 3 COMMUNICATIONS, INC.,<br><br>　　　　　　　　Plaintiff,<br>　v.<br>LIDCO IMPERIAL VALLEY, INC.,<br><br>　　　　　　　　Defendant. | Case No. 11cv01258 BTM (MDD)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR JURY TRIAL** |

Pending before the Court are Plaintiff's motion for partial summary judgment regarding liability (Doc. 35) and Defendant's motion for a jury trial (Doc. 34). For the reasons set forth herein, the Court DENIES both motions.

## I. PLAINTIFF'S SUMMARY JUDGMENT MOTION

**a.　Background**

This lawsuit arises out of damage to Plaintiff's underground fiberoptic cable line caused by Defendant's excavation activities.

On October 6, 2000, Plaintiff entered an "Easement Agreement with Temporary Work Space" (the "Easement Agreement") with T. J. La Brucherie, Mary K. La Brucherie, and La Brucherie Ranch Inc., a California Corporation (collectively, "LBR"), pursuant to which LBR granted Plaintiff:

> a right of way and easement for (1) a one time right to construct and install a fiber optic system and (2) a perpetual right to operate, maintain, inspect, alter, upgrade, replace and remove such underground communications system ("System") as the Grantee may, from time to time, require, consisting of underground cables, wires, conduits, drains, and other underground facilities and equipment for similar uses, through, under and along a parcel of land ten feet (10') in width ("Easement") . . . together with:
>
> (A)　the right of ingress and egress over and across any adjacent real property owned or controlled by Grantor and the Easement and

>    Temporary Work Space for the purpose of exercising the rights granted herein provided that such ingress and egress does not interfere with the Grantor's improvements or uses;
>
> (B) the right to clear and keep cleared all trees, roots, brush and other obstructions from the surface and sub-surface of the Easement, and during construction or maintenance periods, to use additional areas adjacent to the Easement for ingress and egress.

(Plaintiff's Statement of Undisputed Facts ("SUF") Ex. 1.)  In or around late 2000-early 2001, Plaintiff installed 12 underground conduits and a fiberoptic telecommunications cable pursuant to the easement.

On July 1, 2008, Defendant was excavating across the easement to install a drainage line for LBR.  While excavating, Defendant damaged the conduits and severed the fiberoptic cable.  Defendant did not have consent or permission from Plaintiff to excavate the easement or to contact the conduits or cable.

**b.    Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 314.  The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256.  When ruling on a summary judgment motion, the court must

view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**c.    Discussion**

Plaintiff contends that it is entitled to summary judgment as to liability on its trespass claim, regardless of whether that claim is characterized as trespass to real property or trespass to chattels. For the purposes of resolving this motion, the Court presumes that Plaintiff has pleaded both theories of trespass in the alternative, and addresses each in turn. First, however, the Court resolves Defendant's claim that Plaintiff released its damages claim against Defendant.

1.    Defendant's release argument

Defendant argues that it was acting as an agent of LBR when it severed the fiberoptic cable, and that therefore Plaintiff released all damages claims against Defendant under the terms of the Easement Agreement. The Easement Agreement provides:

> Grantee agrees to release . . . Grantor against any and all claims . . . arising . . . because of . . . damages to property, including the System, resulting from any act or omission of Grantor, its employees, contractors, subcontractors, or agents in the use of Grantor's Property for any purpose . . . , unless the injury or damage is caused by wilful misconduct of Grantor, its employees, contractors, subcontractors or agents. . . .
>
> The covenants, terms, conditions and provisions [herein] shall extend to and be binding upon the heirs, executors, administrators, personal representatives, successors, assigns, lessees and agents of the parties hereto.

(SUF Ex. 1.)

The clear language of this provision provides that Plaintiff agreed to release and indemnify and defend LBR for any claims for damages to Plaintiff's fiberoptic system resulting from actions of LBR's "employees, contractors, subcontractors or agents." However, the benefit of the release and indemnity only extends to the "heirs, executors,

administrators, personal representatives, successors, assigns, lessees and agents of the parties [to the easement]." Conspicuously absent from this clause are contractors and subcontractors of LBR. Thus, Plaintiff must release LBR for claims by Plaintiff against LBR for actions of its contractors and agents, but Plaintiff only releases LBR's *agents* for damages they cause to Plaintiff's System.

The facts before the Court on the motion clearly establish that Defendant was *not* acting as an agent for LBR while excavating the easement: Defendant "is an excavating company." (Doc. 34-2, 14 June 2012 Vrevich Decl. ("Vrevich Decl."), ¶ 8.) LBR hired Defendant for a single job: "to install the drain line requiring the excavation which resulted in the cable cut." (Opp. Br. at 11.) LBR "did not control the details of [Defendant's] work" (id.), and Defendant lacked the authority to enter legal relations on behalf of LBR (Doc. 44-2, Ex. 15, Deposition of Timothy La Brucherie). Defendant's relationship to LBR had none of the hallmarks of an agency relationship. See 2B Cal. Jur. 3d Agency § 7 (compiling factors relevant in determining existence of agency relationship). Accordingly, on the present record, Defendant is not protected by the release provision in the Easement Agreement.

Defendant cites to Timothy La Brucherie's deposition testimony for the proposition that, regardless of the language of the Easement Agreement, LBR "itself understood that the terms of the written agreement released Lidco based on their relationship." (Opp. Br. at 11.) However, the language of the Easement Agreement is unambiguous: The release extends to agents, *not* independent contractors. Parol evidence suggesting otherwise does not impact this analysis. See Scruby v. Vintage Grapevine, Inc., 37 Cal. App. 4th 697 (1st Dist. 1995) ("If the language is clear and explicit in the conveyance [of an easement], there is no occasion for the use of parol evidence to show the nature and extent of the rights acquired.").

2.   Trespass

Plaintiff's claim for summary judgment as to liability on its trespass cause of action is based on its assertion that "Trespass is an unlawful interference with possession of

property of another, either real or personal[,]" and that "[t]his is so regardless of the actor's motivation." (Pl. Br. at 4.) This argument is problematic for two general reasons: First, Plaintiff does not own a possessory interest in the real property at issue, such that it can sustain an action for trespass to realty, and second, Plaintiff must establish Defendant's intent to contact the cable in order to sustain an action for trespass to personal property.

### A. Trespass to realty

Plaintiff's property interest in the parcel of land under which the fiberoptic cable lies is an easement. "An easement is an interest in the land of another, which entitles the owner of the easement to a limited use or enjoyment of the other's land. . . . An easement creates a nonpossessory right to enter and use land in another's possession and obligates the possessor not to interfere with the uses authorized by the easement." Main Street Plaza v. Cartwright & Main, LLC, 194 Cal. App. 4th 1044, 1053 (4th Dist. 2011) (citing 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 382, p. 446). Pursuant to the Easement Agreement, LBR granted Plaintiff a "perpetual right to operate" the fiberoptic cable, and LBR retained the "right to use and enjoy the surface of the Easement except when such use interferes with the rights and privileges conveyed herein[.]" (SUF Ex. 1.) Plaintiff asserts that Defendant's interference with its easement is tantamount to a trespass of real property, and that therefore Defendant is liable for trespass upon the mere showing that Defendant intended to excavate and that the excavation caused damage to the cable.

Although the grantee of an easement may bring an action for damages based on interference with its rights under the easement, that action sounds in nuisance, not trespass. See Moylan v. Dykes, 181 Cal. App. 3d 561, 574 (3d Dist. 1986) ("When a person interferes with the use of an easement[, t]he interference is a private nuisance and the party whose rights have been impeded can recover damages as measured in the case of a private nuisance."); 6 Miller & Starr, Cal. Real Est. § 15.72 (3d ed. 2006) (same).

None of the modern cases or treatises cited by Plaintiff support the proposition that

an easement providing a limited right of access to a piece of real property owned and possessed by someone else can support an action for trespass. The closest Plaintiff comes is <u>Pacific Telephone and Telegraph Company v. Granite Construction Company</u>, 225 Cal. App. 2d 765 (2d Dist. 1964), wherein the defendant road construction company damaged the plaintiff's underground cable. That court found that the defendant was aware of the location of the cable, and had consciously disregarded it. The Court then held that the defendant

> did trespass upon plaintiff's *franchise rights*, and that it should be held solely responsible for the injuries to the cable proximately caused by Granite's negligent or intentional failure to use proper care in preventing or avoiding injury to the said underground installation.

225 Cal. App. 2d at 769 (emphasis added). The "franchise rights" at issue were rights given pursuant to California's Public Utility Code to install the line beneath the surface along a public roadway. Easements are nowhere mentioned in this decision. Moreover, <u>Pacific Telephone</u> imposed liability for damages caused by the defendant's "negligent or intentional failure to use proper care," and therefore that case does not support Plaintiff's argument that Defendant is strictly liable in trespass for damages caused by the excavation, so long as Defendant was excavating on purpose.

In short, since interference with an easement does not support a claim for trespass, Plaintiff is not entitled to summary judgment on its trespass claim based on the undisputed fact that Defendant's intentional excavation severed Plaintiff's cable.

### B.   Trespass to chattel

"Trespass to chattel . . . lies where an intentional interference with the possession of personal property has proximately caused injury." <u>Intel Corp. v. Hamidi</u>, 71 P.3d 296, 30 Cal. 4th 1342, 1350-51 (2003) (citing <u>Thrifty-Tel, Inc. v. Bezenek</u>, 46 Cal. App. 4th 1559, 1566 (4th Dist. 1996)). "It is clear that California law requires intent as an element of trespass to chattels." <u>Crab Boat Owners Ass'n v. Hartford Ins. Co. of the Midwest</u>, No. C03-05417, 2004

WL 2600455, at *3 (N.D. Cal. Nov. 15, 2004).

The Restatement Second of Torts, cited favorably by the California Supreme Court in Intel Corp. regarding the contours of the trespass to chattels cause of action (30 Cal. 4th at 1351), provides clarity on the intent requirement. The requisite "intention is present when an act is done for the purpose of using or otherwise intermeddling with a chattel or with knowledge that such an intermeddling will, to a substantial certainty, result from the act." Restatement (Second) of Torts § 217 cmt. c (2012). "'Intermeddling' means intentionally bringing about a physical contact with the chattel." Id. cmt. e. Importantly, the Restatement notes:

> It is not necessary that the actor should know or have reason to know that such intermeddling is a violation of the possessory rights of another. Thus, it is immaterial that the actor intermeddles with the chattel under a mistake of law or fact which has led him to believe that he is the possessor of it or that the possessor has consented to his dealing with it.

Id. cmt. c. In summation, the actor must intend to use or cause contact with the chattel, but in so doing, he need not intend to interfere with the property rights of another.

Plaintiff advances a different interpretation of the intent requirement, contending that the plaintiff in a trespass to chattels case must show only "that the trespasser intended to perform the act which interferes with the plaintiff's property rights." (Rep. Br. at 3.) But most of the cases relied upon by Plaintiff are inapposite, both because they pre-date the California Supreme Court's articulation of the elements of trespass to chattels in Intel Corp., and because—to the extent they involve claims for trespass to chattels—they address situations where the alleged trespassers *intended to physically contact the property at issue*, thereby obviating the need to address directly the issue relevant in this litigation.

Plaintiff also relies on MCI Telecommunications Corp. v. ERM West, Inc., No. Civ. S-95-2013, 1996 WL 3356992 (E.D. Cal. Dec. 26, 1996), a similar case involving the severing of an underground cable. That case granted summary judgment in favor of Plaintiff because "the evidence undisputedly shows that defendants drilled at site CNB-6 and that the act of intentionally putting the auger in the ground proximately caused the cable to be severed. *This is all the evidence of intent a trespass claim requires*." 1996 WL 3356992, at *1

(emphasis added). Plaintiff's reliance on this case is problematic, for several reasons. First, though it is not entirely clear, MCI appears to address a claim of trespass to *real property*, not chattels. See id. ("Trespass is an unauthorized entry *onto another's property*, 'regardless of the actor's motivation.'" (emphasis added)). Second, to the extent it addresses trespass to chattels, it predates Intel Corp. and cites the wrong standard. Third, MCI is not binding on this Court, and to the extent it can be read to hold, under the applicable California law, that an alleged trespasser of chattels need not intentionally physically contact the chattels, the Court declines to follow it.

In light of the California Supreme Court's clear articulation of an intent requirement in Intel Corp. and its favorable citation to the Restatement, the Court imposes the Restatement's requirement that the actor intend to physically contact the chattel. See In re Apple & AT & TM Antitrust Litigation, 596 F. Supp. 2d 1288, 1307 (N.D. Cal. 2008) (holding, in light of Intel Corp., that plaintiffs' trespass to chattels claim survived a motion to dismiss because plaintiffs alleged "that Apple intentionally damaged their iPhones via its dissemination of Version 1.1.1"); Crab Boat Owners, 2004 WL 2600455, at *3-4 (N.D. Cal. Nov. 15, 2004) (holding that crab fishermen's claims that defendant competitors "intentionally" severed lines to plaintiffs' crab pots "support the . . . trespass to chattels cause of action"). Since there remains a dispute as to whether Defendant knew or intended that its excavation activities would physically contact the fiberoptic cable, summary judgment on the issue of liability for trespass to chattels is inappropriate.

## II.  DEFENDANT'S MOTION FOR A JURY TRIAL

Defendant filed its answer on July 19, 2011, and did not serve and file a request for a jury trial within the next fourteen days. Accordingly, Defendant waived its right to a jury trial. See Fed. R. Civ. P. 38(b) and (d). Defendant's decision to waive a jury trial at that time was deliberate: "Lidco did not file a jury demand because liability was not believed to be an issue at that time as there was no question that [Defendant] severed the cable. The issue

in the case appeared to be primarily one of law, the measure of [Plaintiff's] damages." (Vrevich Decl. ¶ 11.)

Nearly a year later, on June 22, 2012, Defendant filed the present motion for a jury trial, pursuant to Rule 39(b).  Rule 39(b) provides that "the court may, on motion, order a jury trial on any issue for which a jury might have been demanded."  Fed. R. Civ. P. 39(b).  The Court's discretion to grant a Rule 39(b) motion "is narrow . . . and does not permit a court to grant relief when the failure to make a timely demand results from an oversight or inadvertence. . . . An untimely request for a jury trial must be denied unless some cause beyond mere inadvertence is shown."  Pacific Fisheries Corp. v. HIH Cas. & General Ins., 239 F.3d 1000, 1002 (9th Cir. 2001).  This is "a bright line rule."  Russ v. Standard Ins. Co., 120 F.3d 988, 990 (9th Cir. 1997).

In support of its motion for a jury trial, Defendant claims that unexpected issues of fact arose during the discovery period in this case:

> Specifically, issues of fact arose regarding whether [Defendant] knew or reasonably should have known of the presence of [Plaintiff's] cable before conducting the excavation, whether the cable is located within an easement on the private property or in a public right-of-way, whether [Defendant] was [LBR's] agent so as to preclude suit under the terms of the easement, and whether Level 3 properly maintained their warning signs.

(Def. Br. at 3; see also Vrevich Decl. ¶ 15.)  This rationale is insufficient to support the motion for a jury trial for two reasons.

First, "when a party *intentionally* waives the right to a jury trial, he cannot meet the burden of demonstrating [more than] mere inadvertence."  Jimena v. UBS AG Bank, Inc., No. CV-F-07-367, 2008 WL 2951213, at *3 (E.D. Cal. July 29, 2008) (emphasis added); see also, e.g., Paulissen v. U.S. Life Ins. Co. in City of New York, 205 F. Supp. 2d 1120, 1125 (C.D. Cal. 2002) ("Because Plaintiff intentionally and explicitly waived her right to a jury trial, the Court declines to exercise its discretion under Rule 39(b) to order a trial by jury."); Alvarado v. Santana-Lopez, 101 F.R.D. 367, 368 (S.D.N.Y. 1984) (holding that regardless of whether "defendants merely overlooked the need to file a timely jury demand without the benefit of discovery[,]" or they took "a calculated gamble that discovery would prove a jury

trial undesirable[,]" they showed "nothing beyond mere inadvertance").

Sait Electronics, S.A. v. Schiebel, 846 F. Supp. 17 (S.D.N.Y. 1994), is instructive. In that case, "counsel 'initially assumed that since the Complaint was based upon a contract of guarantee, that contract would soley [sic] involve questions of law so a jury trial could not have been demanded.' After further consideration, Schiebel now wants a jury and argues that the granting of such motion will not prejudice plaintiff." 846 F. Supp. at 18. Applying the same "more than mere inadvertence" standard employed by the Ninth Circuit,[1] the Sait Electronics court denied the motion for a jury trial, reasoning: "[F]rom defendant's motion papers it appears that defendant's failure to make a timely demand was not due to inadvertence at all, but to a deliberate decision followed by either a change of mind or the discovery that a jury trial was not inappropriate for the issues involved." Id.

Second, the issues of fact set forth by Defendant do not justify a reversal of Defendant's waiver of its jury right, since, for the most part, the importance of these issues were all known or knowable at the time Defendant filed its answer. The issue of "whether [Defendant] knew or reasonably should have known of the presence of [Plaintiff's] cable" was presented in Defendant's answer. See Answer, Doc. 6, ¶ 15 (denying that Defendant acted negligently in failing to determine the exact location of the cable before excavating). The related issue of "whether [Plaintiff] properly maintained [its] warning signs" was implicit in a memo prepared by Defendant's president the day after Defendant severed the cable. See Doc. 41-1, 18 July 2012 Proszek Decl., Ex. 1 (2 July 2008 Memo) ("[The] sign was not visible from our location."). Defendant does not explain why it did not identify the issue of "whether the cable is located within an easement on the private property or in a public right-of-way" until after receiving Plaintiff's document production.

The only issue actually not in dispute at the time Defendant waived its right to a jury trial is the agency issue, which legitimately arose only after the production of the Easement

---

[1] See Baldwin v. United States, 823 F. Supp. 2d 1087, 1112-13 (D.N. Mar. I. 2011) ("The only other circuit to share [the Ninth Circuit's] narrow interpretation of Rule 39(b) is the Second Circuit Court of Appeals: '[M]ere inadvertence in failing to make a timely jury demand does not warrant a favorable exercise of discretion under rule 39(b)[.]" (citing Noonan v. Cunard S.S. Co., 375 F.2d 69, 70 (2d Cir. 1968))).

Agreement. However, on the record before the Court, this new issue does not warrant a jury trial because, as explained above, the evidence does not show that Defendant was LBR's agent. Furthermore, Defendants could have obtained the easement document prior to the deadline for demanding a jury trial. In short, none of the grounds advanced by Defendant in any way warrant a reversal of Defendant's jury trial waiver.

Defendant also argues that even if it cannot establish grounds for Rule 39(b) relief, its failure to serve and file a jury demand in a timely manner is the result of "excusable neglect," and that it is therefore entitled under Rule 6(b)(2) to an extension of Rule 38(b)'s jury demand deadline. Although the Ninth Circuit has broadly held that "the district court [may] not employ another rule to circumvent this circuit's prohibition on granting untimely jury demands due to inadvertence" (Pacific Fisheries, 239 F.3d at 1002 (citing Russ, 120 F.3d at 990)), there is some authority supporting the availability of the claimed Rule 6(b) avenue of relief.[2]

This Court does not need to decide whether Defendant can extend the Rule 38(b) jury demand deadline under Rule 6(b)(2), as Defendant's initial waiver of the jury trial right was a deliberate decision, not excusable neglect. See In re Veritas Software Corp. Securities Litigation, No. C-03-0283, 2006 WL 463509, at *4 (N.D. Cal. Feb. 24, 2006) ("[T]actical decisions do not amount to affirmative showings of excusable neglect under Rule 6(b)." (citing African American Voting Rights Legal Defense Fund, Inc. v. Villa, 54 F.3d 1345, 1350 (8th Cir. 1995))).

And even if Defendant's delay were the result of neglect, it would not be excusable. The circumstances relevant to determining whether neglect was "excusable" include: (a) the

---

[2] See Raymond v. Int'l Bus. Mach. Corp., 148 F.3d 63, 66 (2d Cir. 1998) (affirming district court's decision to permit plaintiff leave to serve untimely jury demand pursuant to Rule 6(b)(2), that "mere inadvertence, without more, *can* in some circumstances be enough to constitute 'excusable neglect' justifying relief under Rule 6(b)(2)" (emphasis in original)); Baldwin, 823 F. Supp. 2d at 1116-17 (following Raymond, and reasoning that Russ holding is limited to barring plaintiffs from evading Rule 38(b) by voluntarily dismissing without prejudice under Rule 41(a) and then re-filing with jury demand); Tarrer v. Pierce Cty., No. C10-5670, 2011 WL 5864686, at *4 (W.D. Wash. Nov. 22, 2011) (denying motion for jury trial made under Rules 39 and 6 because "Defendants have not shown excusable neglect, or anything beyond oversight and inadvertence, in failing to make a timely jury demand").

danger of prejudice; (b) the length of the delay and its potential impact on judicial proceedings; (c) the reason for the delay, including whether it was within the reasonable control of the movant; and (d) and whether the movant acted in good faith. <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Lts. P'Ship</u>, 507 U.S. 380, 395 (1993). Here, the length of delay was significant: Over ten months elapsed between the Rule 38(b) deadline and the filing of Plaintiff's motion. The reason for delay does not militate in favor of Defendant either, since most of the "new" issues motivating Defendant's motion were known or knowable to Defendant at the time it served its answer. The Court makes no finding as to Defendant's good faith. Considering the above, the Court finds that even if Rule 6(b)(2) provided an end-around to Rule 39(b)'s "more than mere inadvertence" standard, Defendant would not be able to take advantage of it.

Notwithstanding that the Court has denied Defendant's motion for a jury trial, this case has been randomly selected by the Clerk of the Court for transfer to newly appointed Judge Gonzalo Curiel. Because Judge Curiel will be conducting the trial, the Court grants Defendant leave to seek reconsideration of its motion for a jury trial or alternatively for an advisory jury before Judge Curiel.

## IV.  CONCLUSION

For the reasons set forth herein, the Court DENIES Plaintiff's motion for summary judgment as to liability (Doc. 35) and DENIES Defendant's motion for a jury trial (Doc. 34).

**IT IS SO ORDERED.**

DATED:  October 11, 2012

BARRY TED MOSKOWITZ, Chief Judge
United States District Court